UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZAINAB MOHAMMED,<br><br>              Plaintiff,<br><br>       v.<br><br>CHRISTINE E. WORMUTH,<br><br>              Defendant. | Case No. 21-cv-03481-NC<br><br>**ORDER GRANTING<br>DEFENDANT'S MOTION TO<br>DISMISS**<br><br>Re: ECF 24 |

Defendant Christine E. Wormuth, Acting Secretary of the Army, moves to dismiss Plaintiff Zainab Mohammed's first amended complaint (FAC) for Title VII retaliation on the ground of issue preclusion. The Army asserts that the issue in the complaint–whether the Army retaliated against Mohammed for whistleblowing–is the same as the issue decided in a prior Merit Systems Protection Board (MSPB) case. Mohammed argues that the issues are different because Whistleblower Protection Act (WPA) cases and Title VII cases have different evidentiary standards. After evaluating the briefing, the Court grants the Army's motion to dismiss, finding that issue preclusion applies.

## I.       BACKGROUND

The relevant facts from the FAC are as follows. Mohammed worked at the Defense Language Institute Foreign Language Center (DLI) for the Army from February 7, 2011, until October 24, 2016. ECF 22 at ¶¶ 6, 20. Mohammed was hired as a Senior Instructor

1    and was later promoted to Assistant Professor.  *Id.* at ¶ 6.

2         In February 2013, Mohammed reported to the Dean of DLI, Dr. Hiam Kanbar, that

3    her first-line supervisor subjected her to discrimination and favoritism; in response,

4    Mohammed received a Notice of Counseling letter.  *Id.* at ¶ 8.  She filed a complaint with

5    the Office of Special Counsel (OSC) regarding the letter.  *Id.*  Upon review, the MSPB

6    found that the letter was indeed retaliatory and ordered that it be rescinded.  *Id.*

7         In January 2016, Mohammed again reported to her first-line supervisor that she was

8    being discriminated against.  *Id.* at ¶ 9.  This time, she was immediately transferred to a

9    different department.  *Id.*  On April 27, 2016, Mohammed reported to the Provost that

10   Dean Deanna Tovar and Associate Provost Dr. Kanbar (formerly the Dean of DLI) were

11   retaliating against her and subjecting her to a hostile work environment.  *Id.* at ¶ 10.

12   Mohammed told the Provost that she did not want to file an Equal Employment

13   Opportunity complaint, but she would if she had to.  *Id.* at ¶ 11.  A week later, the Provost

14   emailed a human resources specialist about Mohammed's April 27 complaints, saying that

15   she "would like to work this through without immediately jumping into how hard can we

16   hit her [Mohammed] . . . If we want to [hit] her with a baseball bat, though, I will stand

17   back and let her file all her complaints with EEO, etc., and I think she may actually win

18   some."  *Id.* at ¶ 12.

19        In July 2016, Mohammed filed a complaint with the OSC under the WPA.  *Id.* at ¶

20   17.  Soon thereafter, Dean Tovar issued Mohammed a termination letter; he later placed

21   her on administrative leave through her termination date.  *Id.* at ¶¶ 18, 20.

22        On August 10, 2016, Mohammed filed a formal complaint with the Equal

23   Employment Opportunity Commission (EEOC) alleging retaliation.  *Id.* at ¶ 13.  In

24   December 2016, Mohammed requested a hearing because the Army had not yet made a

25   decision on the EEO complaint.  *Id.* at ¶ 23.  On March 3, 2017, the EEOC ordered the

26   Army to upload a Report of Investigation of Mohammed's EEO complaint within fifteen

27   days.  *Id.* at ¶ 24.  The Army did not upload the ROI.  *Id.*  On April 8, 2017, the EEO

28   investigation ended, but Mohammed was not informed.  *Id.* at ¶ 25.  During this time

United States District Court
Northern District of California

2

Mohammed asked an EEO investigator about the status of the investigation, but she did not receive a response. *Id.* at ¶ 26. On May 9, 2017, Mohammed received an incomplete ROI, and when she requested a completed document she again did not receive a response. *Id.* at ¶¶ 27, 28. After receiving the incomplete ROI and no status on the investigation, Mohammed shifted her focus to the OSC complaint. *Id.* at ¶ 30.

On September 18, 2017, the OSC closed Mohammed's WPA complaint. *Id.* at ¶ 32. A month later, Mohammed appealed to the MSPB. *Id.* at ¶ 34. On August 17, 2018, the MSPB issued its initial decision, finding that: (1) Mohammed made a protected disclosure; (2) the disclosure was not a contributing factor in the Army's personnel actions; and (3) the Army had shown clear and convincing evidence that it would have taken the same personnel action without her protected disclosure. *Id.* at ¶ 37; *see Mohammed v. Dep't of the Army*, 780 Fed. App'x 870 (Fed. Cir. 2019). On June 11, 2018, the Federal Circuit upheld the MSPB decision. ECF 22 at ¶ 38.

On February 1, 2018, Mohammed learned that her EEO complaint and the EEOC hearing had been closed on April 7, 2017. *Id.* at ¶ 36. Based on this representation, she continued with the MSPB case instead of attempting to move forward with her EEO complaint. *Id.* On February 27, 2020, Mohammed made a second request for an EEOC hearing on her complaint. *Id.* at ¶ 39. In April 2020, the Army uploaded a complete ROI. *Id.* at ¶ 40. In late 2020, the Army moved for summary judgment on the EEOC complaint without raising an issue preclusion defense. *Id.* at ¶ 42[1]. On March 19, 2021, the Army served Mohammed with the final decision on her EEO complaint. *Id.* at ¶ 43.

**A.    Procedural Background**

Mohammed sued the Army for retaliation under Title VII on May 10, 2021. ECF 1. On June 25, the Army moved to dismiss the complaint on the grounds of issue preclusion. ECF 11. After reviewing the briefing and holding a hearing, the Court terminated the

---

[1] The FAC states that the Army did not raise a claim preclusion (collateral estoppel) defense. *Id.* at ¶ 42. Based on the briefing on the instant motion, it appears that claim preclusion was a typo and should have been "issue preclusion."

3

United States District Court
Northern District of California

Army's motion to dismiss and granted Mohammed leave to amend her complaint so that both parties could sharpen their briefs as to the different evidentiary standards in the cases and to allow Mohammed to amend her complaint as requested in her opposition.  ECF 21. On August 23, 2021, Mohammed filed a FAC.  And on September 16, the Army moved to dismiss the FAC on the same grounds.  ECF 24.  All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c).  ECF 8; ECF 10.

## II.  LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party."  *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).  A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III.  DISCUSSION

In adjudicating Mohammed's WPA claim, the MSPB determined that the Army's proffered reason for terminating Mohammed was legitimate and non-retaliatory.  The Federal Circuit affirmed this finding and further found that the Army's reason for Mohammed's termination was not pretextual.  The Army argues that Mohammed is precluded from litigating her Title VII claim in federal court because her WPA claim was

fully and fairly litigated before the MSPB and affirmed by the Federal Circuit.  ECF 15 at 14.  Mohammed argues that the Court should not dismiss the complaint through issue preclusion because the issues in the two cases are different and equitable estoppel and waiver prevent the Army from raising the defense.  ECF 27 at 10-17.

### A.  Issue Preclusion

Issue preclusion forecloses relitigation of an issue when: (1) the issue at stake is identical to the one alleged in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the earlier action."  *Clark v. Bear Stearns & Co., Inc.*, 966 F.3d 1318, 1320 (9th Cir. 1992).  Mohammed only contests the first prong of this analysis; thus, the Court treats the second and third prongs as conceded.  *See* ECF 27.

### 1.  Identical Issues at Stake

To determine whether the issue in the current litigation is the same as an issue previously litigated, the Court must consider the following factors: (1) Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? (2) Does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding? (3) Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? (4) How closely related are the claims involved in the two proceedings?  *See* Restatement (Second) of Judgments § 27 cmt. c (Am. L. Inst. 1982).  Again, Mohammed only addresses the second question, so the Court assumes that she does not oppose the Army's characterization of the remaining three questions.  *See* ECF 27.

Mohammed argues that the evidentiary standard under the WPA is "entirely different" from the *McDonnell Douglas* analysis for Title VII cases, so the Army cannot establish that the same rule of law was involved in both actions.  The Court disagrees.

A WPA claim first requires an employee to show that they made a protected disclosure and that the disclosure contributed to their employer's adverse personnel action.

5 U.S.C. § 1221(e)(1).  Then, the employer can challenge this showing by demonstrating "by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure."  5 U.S.C. § 1221(e)(2).

A Title VII claim follows the *McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  First, an employee must establish a prima facie case of retaliation.  *See id.* at 802.  If the employee makes this showing, the burden shifts to the employer to articulate "some legitimate, nondiscriminatory reason" for the employer's adverse personnel action.  *Id.*  Finally, the employee has the opportunity to show that the employer's stated reason for the adverse personnel action was in fact "pretext."  *Id.* at 804.

The two standards are not identical, but the Court finds that they involve the application of the same rule of law.  *See* Restatement (Second) of Judgment § 27 cmt. c. Both required an employee to first show that they engaged in a protected disclosure and that their employer took an adverse personnel action against them because of it.  Both allow the employer to challenge the employee's showing by offering an alternative explanation for the adverse employment action.  However, where the analyses differ is critical. The evidentiary standard for an employer under the WPA is *higher* than the standard under the *McDonnell Douglas* framework.  For the WPA, an employer must prove by "clear and convincing evidence" that it would have taken the same adverse personnel action without the employee's protected disclosure.  *See* 5 U.S.C. § 1221(e)(2). In contrast, for a Title VII claim, an employer need only state "some legitimate, nondiscriminatory reason" for its action.  *See McDonnell Douglas*, 411 U.S. at 802.  Thus, a court could logically find that a personnel action was not a retaliation under Title VII if an employer previously proved by clear and convincing evidence that the action was not backlash for an employee's protected disclosure under the WPA.

Here, for Mohammed to state a claim that the Army violated Title VII, after she makes a prima facie showing of retaliation, she needs to show that the Army's reason for terminating her is a pretext for unlawful discrimination.  *See McDonnell Douglas*, 411

U.S. at 802.  However, the Court cannot find that the Army's reason for terminating her–insufficient work to continue staffing so many teachers–is a pretext for unlawful discrimination because the Federal Circuit already found that the Army's reason was not pretextual.  *See Mohammed*, 780 Fed. App'x at 878-79.  Therefore, the Court finds that the issues at stake in the WPA case and this case are the same.

Accordingly, because the issues in the two cases are the same, the issue was actually litigated at the MSPB and the Federal Circuit, and the determination of the issue was critical in the prior case, issue preclusion bars this suit.  *See Clark*, 966 F.3d at 1320.

### B.    Equitable Estoppel

Mohammed then argues that the Army is equitably estopped from asserting issue preclusion as a defense because it critically misinformed her in the MSPB and Federal Circuit proceedings.  ECF 27 at 13.  The elements of equitable estoppel: (1) whether the party to be estopped knew the facts; (2) whether the party to be estopped intended or could justifiably be perceived as intending its conduct to induce reliance; (3) whether the party asserting the estoppel was ignorant of the facts; (4) whether the party asserting estoppel relied upon the government's conduct; and (5) whether the government engaged in affirmative misconduct.  *U.S. v. Harvey*, 661 F.2d 767, 774 (9th Cir. 1981).

Instead of applying the elements of equitable estoppel to the allegations, Mohammed's opposition cites factors for balancing the equities in a case applying "the *Denney* exception."  *See* ECF 27 at 13 (citing *Rodriguez v. Airborne Express*, 265 F.3d 890, 901-02 (9th Cir. 2001)).  Mohammed proceeds to list off allegations from the FAC generally grouped by each *Denney* factor.  *See id.* at 13-15.  The *Denney* exception excuses a plaintiff's noncompliance with exhaustion requirements under California's Fair Employment and Housing Act when the plaintiff's failure to comply can be attributed to the administrative agency charged with processing the complaint.  *See Rodriguez*, 265 F.3d at 900.  This exception does not obviously apply here, and Mohammed fails to provide any argument to support its application to this case.

Despite the Army's reference to the elements of equitable estoppel and arguments

United States District Court
Northern District of California

1    on each point, Mohammed fails to argue that the FAC sufficiently alleges that the Army

2    intended its conduct to induce reliance.  *See Harvey*, 661 F.2d at 774.  Thus, the Court

3    finds that the Army is not equitably estopped from asserting issue preclusion.

4         Finally, Mohammed requests that the Court refrain from dismissing this case on the

5    pleadings because her equitable estoppel contention is novel, but she fails to clearly

6    demonstrate how the equitable estoppel elements apply to the Army's actions and how that

7    application constitutes a novel contention.  *See* ECF 27 at 13-14.  Accordingly, in light of

8    the Court's findings that issue preclusion applies and the complaint fails to sufficiently

9    allege equitable estoppel, the Court dismisses the complaint.

10        **C.    Waiver**

11        Finally, Mohammed argues that the Army waived its issue preclusion argument by

12   failing to raise it to the EEOC prior to this case, but she does not cite binding authority to

13   support her argument.  ECF 27 at 15-16.  Further, when considering a waiver argument,

14   the Court should balance the prejudice suffered by the plaintiff against the public interest.

15   *See McGinest v. GTE Serv. Corp.*, 247 Fed. App'x 72, 75 (9th Cir. 2007).  When applying

16   waiver to an assertion of issue preclusion "where the plaintiffs have had a full and fair

17   opportunity to actually litigate the issue and did in fact litigate it, they can not ordinarily be

18   prejudiced by subsequently being held to the prior determination."  *Clements v. Airport

19   Auth.*, 69 F.3d 321, 330 (9th Cir. 1995).  On the other hand, public interest can be greatly

20   advanced by the applying issue preclusion because it would "avoid inconsistent results"

21   and "assist in the conservation of our judicial resources."  *Id.*  Thus, the Court finds that

22   the Army did not waive its issue preclusion argument.  And even if it did fail to timely

23   raise issue preclusion, after balancing the private and public interests, the Court

24   nonetheless applies the doctrine in this case.  *See id.*

25   **IV.   CONCLUSION**

26        The Court GRANTS the Army's motion to dismiss finding that issue preclusion

27   bars this suit because the issues in the complaint were already litigated in the prior MSPB

28   case.  The Court also finds that equitable estoppel and waiver do not prevent the Army

United States District Court
Northern District of California

8

from asserting issue preclusion.  The Court previously granted Mohammed leave to amend

her complaint to specifically address the potential deficiencies related to issue preclusion

and equitable estoppel.  *See* ECF 21.  Because the resultant amended complaint is still

insufficient to state a claim, the Court finds that amendment would be futile.  Accordingly,

Mohammed's complaint is hereby dismissed, with prejudice.


**IT IS SO ORDERED.**


Dated:  November 1, 2021                    _____

NATHANAEL M. COUSINS
United States Magistrate Judge